UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:13CV33-RLV

| | |
|---|---|
| DONNA MAE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **MEMORANDUM AND ORDER** |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment, (Doc. 12), and Memorandum of Law in Support, (Doc. 13), both filed on February 7, 2014; and the Commissioner's Motion for Summary Judgment, (Doc. 14), and Memorandum of Law in Support, (Doc. 15), both filed on April 4, 2014. As ordered by the Court, the parties filed supplemental briefs, (Docs. 20 & 21), to address the recent Fourth Circuit decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), both filed July 15, 2015. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision which found her not disabled under the Social Security Act (the "Act").

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and the matter **REMANDED** for further administrative proceedings before the Commissioner.

## I. BACKGROUND

On August 8, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging that she became disabled on May 9, 2009. (Tr. 19). Both of these claims were initially

1

denied on November 23, 2011, (Tr. 19, 184), and denied upon reconsideration on February 24, 2012, (Tr. 19, 193).

On April 18, 2012, Plaintiff filed a timely written request for a hearing before an administrative law judge ("ALJ"). (Tr. 19). This hearing was granted and, on February 8, 2013, ALJ Gregory M. Wilson presided over a video hearing to review the Plaintiff's claims. (Tr. 19, 76-109). At this hearing, while represented by attorney Russell R. Bowling, Plaintiff amended her alleged disability onset date to June 26, 2011. (Tr. 19, 80). An impartial vocational expert, Carroll H. Crawford, ME, also testified at this hearing. (Tr. 19, 100-06). On March 15, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Act from June 26, 2011 to the date of the decision. (Tr. 19, 49). On July 23, 2013, Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, rendering the ALJ's decision as the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1-5).

Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right to review of the Commissioner's final decision, and she timely filed the present action on September 17, 2013. (Doc. 1). The parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Judicial review of the final decision is authorized pursuant to 42 U.S.C. § 405(g) and is limited to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id*. A reviewing court must uphold the decision of the Commissioner, even in instances where the

reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456.

The issue before this Court, therefore, is not whether Plaintiff is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act between her amended alleged onset date of June 26, 2011 and the date of the ALJ's decision.[1] Plaintiff has the burden of proving she was disabled within the meaning of the Act in order to be entitled to benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or is medically equal to one of the "Listings" in 20 C.F.R. Part 404, Subpart

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et. seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and (5) if unable to perform the requirements of past relevant work, whether the claimant is able to adjust to other work, considering her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering her RFC and vocational factors, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If she is able to carry this burden through the fourth step, the burden shifts to the Commissioner on the fifth step to show that other work is available in the national economy which the claimant could perform. *Id*.

In the instant case, the ALJ determined at step one that Plaintiff has not been engaged in substantial gainful activity since her alleged onset date of June 26, 2011 through the date of the ALJ's decision. (Tr. 21). Although Plaintiff worked after the amended alleged onset date, this work did not rise to the level of substantial gainful activity. (Tr. 21). At step two, the ALJ determined that Plaintiff had a combination of medically determinable severe impairments, including: "Left knee degenerative joint disease; degenerative disk disease; facial neuralgia and migraine headaches; morbid obesity; depression and anxiety with post-traumatic stress disorder (PTSD)." (Tr. 22-26). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 26-29). At step four, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she can only frequently handle, finger with her right upper extremity because of her right thumb proximal phalanx fracture; she can only occasionally balance, stoop, kneel, crouch and crawl because of left leg degenerative joint disease and a meniscal tear status post arthroscopy; she can never climb ropes, ladders, and must avoid concentrated exposure to

hazards because of migraines headaches and narcotic medication; and she is limited to simple one-two step tasks in a low stress work environment, and to frequent contact with coworkers and to occasional contact with the public because of her mental impairments. (Tr. 29-47). He also found that she was no longer capable of performing her past relevant work. (Tr. 47). At step five, the ALJ, based on testimony of the vocational expert ("VE"), concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform" such as hand packer, order filler, or produce packer. (Tr. 48-49).

On appeal to this Court, Plaintiff presents the following assignments of error: (1) the ALJ erred in determining that Plaintiff could perform a range of medium work; (2) the ALJ's credibility determination is unsupported by substantial evidence; (3) the ALJ's step five determination is unsupported by substantial evidence because the ALJ relied on an incomplete hypothetical to the VE; and (4) the hypothetical question to the VE was incomplete because the ALJ failed to account for Plaintiff's own determination of moderate limitations in concentration, persistence, and pace.[2] (Docs. 13, 21) After reviewing the pleadings and briefs, the Court addresses Plaintiff's assignments of error as follows.

**A. Ability to Perform a Range of Medium Work**

Plaintiff argues that the ALJ erred in determining that she could perform a range of medium work because "there is no evidence in the file to suggest Plaintiff can perform medium work." (Doc.13, p. 13). Plaintiff further argues the ALJ should have "(1) ordered a consultative examination surrounding Plaintiff's physical impairments; or in the alternative (2) obtained a medical source statement from Dr. Neslen, Plaintiff's treating orthopedist" before making his RFC determination. (Doc. 13, p. 13). Defendant responds to this argument by noting the

---

[2] Issues 3 and 4 will be considered together as they both involve the adequacy of the ALJ's hypothetical to the VE and whether substantial evidence supports the ALJ's determination.

Plaintiff, not the ALJ, has the burden of proving her RFC. (Doc 15, p. 4). Additionally, "[a]n ALJ need only order a consultative examination if the record is insufficient to make a decision." (Doc. 15, p. 7). Defendant argues that since the record was sufficient for the ALJ to make an RFC determination based on substantial evidence, the ALJ was under no obligation to order a consultative examination or medical source statement. (Doc 15, p. 7-9). The Court finds that the ALJ did base his finding that Plaintiff could perform a range of medium work upon substantial evidence within the record and the record was not insufficient for that decision.

"[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination." *Bishop v. Barnhart*, 78 Fed. Appx. 265, 268 (4th Cir. 2003); *see* 20 C.F.R. §§ 404.1519(a), 416.919(a). "The regulations further provide that a consultative examination is required when the evidence as a whole is insufficient to support a decision." *Id*. "The RFC finding is not a medical opinion, but an administrative determination reserved to the ALJ based upon a consideration of 'all of the relevant medical and other evidence.'" *Cosom v. Astrue*, No. 3:11CV294-RJC, 2012 WL 1898921, at *5 (W.D.N.C. Feb. 23, 2012) (quoting 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1527(e)(2)). In this case, the ALJ used in depth medical records from multiple medical examinations, medical tests, and the Plaintiff's actions over the relevant period of time in determining the Plaintiff was capable of medium exertional work. (Tr. 47, 481, 496-97, 503, 506, 520, 524, 532, 537, 574, 575, 583, 593-96, 619, 709, 728-38, 762, 765, 769, 776, 782, 787, 791).

Although the State agency medical consultant, Dr. E. Woods, determined the Plaintiff was only capable of light work, the ALJ was within his discretion to assign this opinion little weight. (Tr.159-60, 47). As the ALJ noted, he considered that Dr. Woods was not an orthopedist, Dr. Woods had not examined or treated the Plaintiff, and the additional facts discovered at the ALJ hearing, which indicated the Plaintiff was capable of medium exertional work. (Tr. 47). In particular, the ALJ focused on Plaintiff's work as a CNA, which is medium exertional work,

through March of 2012. (Tr. 47). Additionally, discounting a physician's opinion does not require an ALJ to re-contact that physician as part of the ALJ's duty to develop the record. *Young v. Astrue*, No. 1:09CV1008, 2013 WL 474787, at *5-6 (M.D.N.C. Feb. 7, 2013).

The ALJ had discretion in deciding whether a consultative examination was necessary before issuing his ruling. Additionally, the ALJ articulated substantial evidence in favor of a medium exertional work level RFC, along with the acknowledged limitations. (Tr. 29-47). Therefore, the ALJ was under no obligation to order a consultative examination surrounding Plaintiff's physical impairments before issuing his RFC finding.

Similarly, the Plaintiff argues that the ALJ should have obtained a medical source statement from Dr. Neslen before making his RFC finding. However, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Bell v. Chater*, 57 F.3d 1065, 1995 WL 347142 at *4 (4th Cir. June 9, 1995) (quoting *Clark v. Shalala*, 28 F.3d 828, 830−831 (8th Cir. 1994). Since the record was reasonably complete when the ALJ made his RFC determination, and he articulated substantial evidence in favor of a medium exertional work level RFC, along with the acknowledged limitations, the ALJ was under no obligation to obtain a medical source statement from Dr. Neslen.

Finally, even if the ALJ erred in failing to obtain a consultative examination or medical source statement from one of the Plaintiff's doctors, this would have been a harmless error. "[A]ny error is reviewed under the harmless error doctrine." *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014). "Thus, if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.'" *Id*. (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). In this case, the VE testified that even if Plaintiff was only capable of light exertional level work, with the same additional RFC limitations as the ALJ assigned to the Plaintiff's medium RFC finding, Plaintiff would still have ample job opportunities in the national economy, such as: garment sorter,

7

garment folder, or cafeteria attendant. (Tr. 103−04). Since there were ample jobs in the national economy for Plaintiff even with a light exertional level RFC, remanding for a failure to obtain a consultative examination or medical source statement regarding the Plaintiff's medium exertional level RFC would be a waste of time. Therefore this would be a harmless error.

### B. Credibility Determination

Plaintiff argues the ALJ's credibility determination of her pain symptoms were unsupported by substantial evidence. (Doc. 13, p. 15). ALJs are to assess Plaintiff's credibility by conducting a two-step analysis. *Craig v. Chater*, 76 F.3d 585, 594−95 (4th Cir. 1996). First the ALJ must determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Id*. at 594. Then, once the Plaintiff has made this threshold showing, the ALJ must evaluate the alleged symptoms' intensity and persistence along with the extent they limit the claimant's ability to engage in work. *Id*.; *see also* 20 C.F.R. § 404.1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. *Id*. Although the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged pain, he also determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 45).

First, Plaintiff alleges the ALJ erred by considering her application for unemployment benefits as a part of his credibility assessment. (Doc. 13, p. 16). Although it is the SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits, "receiving unemployment benefits…is among the many factors that may well support a determination that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability." *See Clark v. Astrue*, No. 3:12CV122-MOC, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012). Appropriately, the ALJ found Plaintiff's application for unemployment benefits did not estop her from receiving disability benefits, however it was considered as a part of the ALJ's credibility assessment along with: (1) her lack of an explanation reconciling it with her alleged onset date; (2) her testimony that she looked for work while receiving unemployment benefits; and (3) the performance before and after that date of medium exertional work as a certified nursing assistant. (Tr. 22). Since Plaintiff's application for unemployment benefits was just one of many factors considered in the ALJ's credibility determination, it was a proper consideration.

Second, Plaintiff alleges the ALJ erred by considering her "disturbing lack of candor with some of her physicians." (Doc. 13, p. 17). However, in order to determine the credibility of an individual's statements, the ALJ must consider the consistency of Plaintiff's statements with: (1) information provided by medical sources; (2) Plaintiff's own statements; and (3) other information in the case record. SSR 96-7p, 1996 WL 374186, at **5−6. Since the record contains multiple examples of the Plaintiff's inconsistent statements regarding her work history, (Tr. 83-84, 234-35, 286, 734), trouble grasping or gripping despite a 5/5 hand strength test, (Tr. 574-75, 576-77, 582), injuries resulting from her May 2, 2011 car accident, (Tr. 91, 486, 496-97, 500-02, 573, 593, 596), and her prescribed medications (Tr. 45), the ALJ properly considered Plaintiff's lack of candor with her physicians as a portion of his credibility determination.

Third, Plaintiff alleges substantial evidence does not support the ALJ's credibility

determination of her mental limitations because the ALJ considered her lack of treatment despite Plaintiff's inability to afford mental health treatment. (Doc. 13, p. 17). Plaintiff argues the report of Dr. Miller, which states that on September 22, 2011 Plaintiff had no income or financial access to treatment, (Tr. 617), prohibits the ALJ from considering a lack of mental health treatment as part of his credibility determination, (Doc. 13, p. 17). "Although a lack of resources to follow the prescribed medical treatments may in some circumstances justify a claimant's failure to obtain treatment, a claimant must first demonstrate that he or she attempted to obtain treatment and was denied such treatment because of claimant's inability to pay or lack of insurance." *See Sizemore v. Astrue*, No. 1:11CV317-MR, at * 13 (W.D.N.C. Oct. 5, 2012) (citing *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)). In this case, Dr. Miller's report establishes Plaintiff could not afford continuing mental health treatment as of September 22, 2011. (Tr. 617) However, the ALJ's credibility determination focused on the period of time before 2011 when Plaintiff was working, (Tr. 83-84, 89, 234-35, 286), receiving limited mental health services despite having Medicare coverage, (Tr. 373, 466-77, 535, 764, 774), and had multiple normal mental health examinations, (Tr. 537, 551, 574, 643, 709, 740, 746, 752, 757, 762, 769). Additionally, the ALJ appropriately relies upon the opinions of non-examining psychological consultants, Dr. Newman and Dr. Fulmer, which support the conclusion that Plaintiff's mental impairments were not disabling. (T. 124-26, 161-63); *see Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record"). Since the ALJ's credibility determination regarding Plaintiff's failure to seek mental health treatment focused on a different time period than Dr. Miller's report, the ALJ is not prohibited from considering this as a factor.

Since the ALJ's negative credibility determinations concerning the intensity, persistence and limiting effects of Plaintiff's pain symptoms were supported by substantial evidence in the record, this determination was appropriately made.

### C. The ALJ's Hypothetical to the Vocational Expert & Plaintiff's Mental Limitations with Regard to Concentration, Persistence, and Pace

In light of the Fourth Circuit's ruling in *Mascio v. Colvin*, Brown argues that the ALJ's hypothetical questions to the VE concerning possible employment in the local and national economy was incomplete or insufficient to support the ALJ's ruling. 780 F.3d 632, 638 (4th Cir. 2015) (Doc. 13, p. 18). In *Mascio*, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638. The court distinguished the "ability to perform simple tasks from the ability to stay on task," and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In *Mascio*, remand was necessary because the ALJ provided no explanation at all regarding whether the claimant's limitations in concentration, persistence, or pace affected her RFC. *Id.* The Fourth Circuit explained that moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.* Remand, however, is not automatically required when an ALJ fails to explicitly account for concentration, persistence, or pace limitations in their hypothetical to the VE. *See id.* For instance, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.t*

Here, the ALJ found Brown's limitation with regard to concentration, persistence and pace as "moderate." (Tr. 28). The ALJ noted:

> Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence or pace are best observed in work settings, but may also be reflected by limitations in other settings.

(Tr. 28). In this case, the evidence of claimant's limitation with regard to concentration, persistence and pace indicated that Brown's concentration and focus was affected by depression,

11

insomnia, left-sided facial pain and numbness. (Tr. 467, 617, 567, 573−79, 580−81, 735−38).

In deciding this issue, the undersigned must determine whether the ALJ's RFC determination, and the hypothetical to the VE, adequately took into account claimant's limitations with regard to concentration, persistence and pace. Generally speaking, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Here, the ALJ took into account the opinions of two state agency psychologists, Drs. Newman and Fulmer. (Tr. 125, 162). In their Mental RFC Assessments, Drs. Newman and Fulmer opined as follows and stated that "[Plaintiff] may have some deficits in sustained concentration, but is capable of carrying out short and simple instructions and has the ability to maintain attention & concentration for 2 hours at a time as required for the completion of simple tasks." (Tr. 125, 162). The ALJ incorporated this into Plaintiff's RFC by acknowledging Plaintiff "is limited to simple one-two step tasks in a low stress work environment, and to frequent contact with coworkers and to occasional contact with the public." (Tr. 29-30). The ALJ then relied upon the same limitations, and the identical language, in the hypothetical posed to the VE. (Tr. 48, 102−03). The VE hypothetical accounts for some of Plaintiff's mental limitations under SSR 96-8p, such as the claimant's ability to understand, carry out, and remember instructions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting, but these mental limitations are different than limitations in concentration. *See* SSR 96-8p, 1996 WL 374184 at *6. The ALJ's statement that he adopts the opinions of Drs. Newman and Fuller in his RFC findings – both concur that Plaintiff Brown's limitations with regard to concentration, persistence, and pace are moderate − does not adequately explain why Plaintiff's limitations in concentration, persistence, or pace did not translate into an additional restriction in the ALJ's hypothetical to the VE. In other words, the RFC and VE hypothetical do

not expressly account for Plaintiff's ability to stay on task for a full work day, as is required by *Mascio*.[3]  *See e.g., Scruggs v. Colvin*, No. 3:14CV466-MOC, 2015 WL 2250890, **5−6 (W.D.N.C. May 13, 2015) (remanding pursuant to *Mascio*; "The court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full workday, to be necessary here.")  Since the ALJ's RFC did not appropriately account for Plaintiff's ability to stay on task, as is now required by *Mascio*, the ALJ's hypothetical to the VE was incomplete.  The Court finds the ALJ's conclusion concerning Plaintiff's ability to perform work in the national or local economy is not supported by substantial evidence.  Therefore, remand is warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 14) is **DENIED**, and this matter is **REMANDED** to the Social Security Administration for further proceedings consistent with this Memorandum and Order.

Signed: October 27, 2015

Richard L. Voorhees
United States District Judge

---

[3]  There is some authority in cases decided before *Mascio* for the proposition that in a given case Social Security Regulation 96-9p, which speaks to customary breaks during a work day, fills the gap in the ALJ's express findings.  *See Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. April 16, 2012) ("Defendant correctly points to Social Security Regulation ('SSR') 96–9p, which provides a guideline for customary breaks during a work-day as follows: '... a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals.' Thus, customary breaks or 'normal breaks,' would reasonably occur approximately every two hours.") (internal citation omitted).   The Court further notes that the facts here are distinguishable from the facts in *Del Vecchio v. Colvin*.  2015 WL 5023857, ** 5−6 (August 25, 2015 W.D.N.C.) (citing *Hawley v. Astrue* for the proposition that customary breaks from the work-day occur approximately every two hours and finding that *Mascio* did not require remand where the RFC conducted by the state agency consultant spoke directly to the claimant's ability to stay on task throughout an 8-hour workday, even with moderate limitations in concentration, persistence, or pace and ALJ's decision adequately explained why claimant's limitations in concentration, persistence, or pace did not translate into additional restrictions in the ALJ's hypothetical to the vocational expert).